UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHELLE LYNN BROWN, | ) | CASE NO. 3:19CV583 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL[1], | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Plaintiff Michelle Lynn Brown ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI"). ECF Dkt. #s 1, 3. Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence for several reasons. ECF Dkt. #s 17, 22. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES the instant case in its entirety WITH PREJUDICE.

## I.    PROCEDURAL HISTORY

On May 18, 2016, Plaintiff protectively filed a Title XVI application for SSI. ECF Dkt. #16 ("Tr.")[2] at 103, 122, 126, 227. In her application, Plaintiff alleged disability beginning June 2, 2014 due to: arthritis in both knees and left hip; degenerative meniscus tear; bone spurs; upper and lower back pain; neck pain. *Id.* at 85, 105, 126. Plaintiff's application was denied initially on September 20, 2016 and upon reconsideration on December 12, 2016. *Id.* at 101-03, 120-22, 126.

On December 27, 2016, Plaintiff requested an administrative hearing. Tr. at 126, 168. On March 16, 2018, a hearing was held before an ALJ in which Plaintiff, with counsel present, and

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill. *See* Fed. R. Civ. P 25(d).

[2] All citations to the transcript refer to the page numbers assigned when the transcript was compiled (located on the bottom right corner of each page) rather than the page numbers assigned when the transcript was filed in the CM/ECF system ("PageID #").

a vocational expert ("VE") testified. *Id.* at 6, 126. The ALJ issued her decision on July 16, 2018, finding Plaintiff not disabled and denying her application for SSI. *Id.* at 123-40. Plaintiff requested a review of the hearing decision, and on January 18, 2019, the Appeals Council denied review. *Id.* at 146-50, 222-24.

On March 15, 2019, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #s 1, 3. On June 24, 2019, Plaintiff filed a merits brief, and the Commissioner filed a merits brief on September 6, 2019. ECF Dkt. #s 17, 20. Plaintiff filed a reply brief on October 4, 2019. ECF Dkt. # 22. The parties subsequently consented to the jurisdiction of the undersigned. ECF Dkt. #23.

## II.     **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On July 16, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 123-40. The ALJ stated that Plaintiff had not engaged in substantial gainful activity since May 18, 2016, the application date. *Id.* at 129. Continuing, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees; status-post August 2014 right knee arthroscopy; degenerative meniscus tear of the right knee; osteoarthritis of the left hip; degenerative disc disease of the lumbar spine; asthma; obstructive sleep apnea; bilateral epicondylitis/mononeuritis; morbid obesity; anxiety; and depression. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 130.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except for the following physical limitations: can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, and crouch, but can never crawl; is limited to frequent handling and fingering with the bilateral upper extremities; can occasionally reach overhead; can never work around hazards such as unprotected heights or moving dangerous mechanical parts; can occasionally operate a motor vehicle; can occasionally work in conditions of humidity, wetness, extreme heat or cold, or in conditions where there is

concentrated dust, odors, fumes, and other pulmonary irritants, or where vibrations are present; is limited to a sit/stand option at her workstation each hour to change position for two minutes while remaining on-task 90 percent of the time; cannot operate foot controls with the right lower extremity. Tr. at 132-33. The ALJ also added the following mental limitations to Plaintiff's RFC: is limited to performing simple, routine, repetitive tasks, but not at a production-rate pace, such as assembly line work; is limited to making simple work-related decisions; is limited to occasional interaction with supervisors, coworkers, and the general public; is limited to tolerating few changes in the work setting, defined as routine job duties that remain status and are performed in a stable, predictable work setting, with any necessary changes occurring infrequently and able to be adequately and easily explained. *Id.* at 133.

The ALJ then stated that Plaintiff has no past relevant work. Tr. at 139. She further found that Plaintiff was a younger individual on the date the application was filed, has at least a high school education, and is able to communicate in English. *Id.* The ALJ noted that transferability of job skills was not an issue because Plaintiff does not have past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 18, 2016, the date the application was filed. *Id.* at 140.

## III. <u>STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS</u>

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' [is] in other contexts, the threshold for such evidentiary sufficiency is not high."). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The

substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.     LAW AND ANALYSIS

Plaintiff challenges the ALJ's decision of July 16, 2018, alleging that the ALJ erred: (1) by improperly weighing certain medical opinions; (2) at step three of the sequential process; and (3) by improperly assessing Plaintiff's RFC and making corresponding errors in her hypothetical questions to the VE. ECF Dkt. #17 at 10-25; #22 at 6-12. For the following reasons, the Court finds that the ALJ did not commit reversible error and substantial evidence supports her decision.

### A.     Medical Opinions

Plaintiff contests the ALJ's treatment of several opinions of record. Plaintiff avers that the ALJ did not adequately consider the opinions of treating sources, Dr. Assenmacher, Dr. Atallah, and Nurse Webb. ECF Dkt. #17 at 20-21; #22 at 6-8. The Court notes that Plaintiff mentioned other opinions, including Dr. Stacey Bowen, D.O., and physical therapist Scott Geist, but made no argument regarding such opinions other than to compare how the ALJ treated opinion evidence. ECF Dkt. #17 at 21. Plaintiff's reply brief clarifies that her main contentions concern Dr. Assenmacher, Dr. Atallah, and Nurse Webb. ECF Dkt. #22 at 8.

#### 1.     Treating Physicians

An ALJ must give controlling weight to the opinion of a treating source[3] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Price v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, she must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 416.927(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)). Although an ALJ must "consider" all of the factors in 20 C.F.R. § 416.927(c) and must "apply" the factors listed in 20 C.F.R. § 416.927(c)(2), including its subsections, through (c)(6) to determine the weight to give that opinion, she is not required to discuss every factor in his decision as long as she provides "good reasons." *See* 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (1996)[4]; *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good

---

[3] The Social Security Administration has changed the treating physician rule for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," available at https://www.regulations.gov/document?D=SSA-2012-0035-0001. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors. Since Plaintiff filed her claim before March 27, 2017, the former treating physician rule applies.

[4] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). Even a one sentence explanation for discounting a treating physician's opinion can suffice under the good reasons requirement. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one -sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement.) (internal citations omitted).

Under the "good reasons" rule, the ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. This allows a plaintiff to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). If an ALJ fails to explain why she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Wilson*, 378 F.3d at 544); *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011).

Plaintiff contests that the good reasons requirement was not met here and that the ALJ did not afford "adequate weight" to the opinions of her treating sources. *See* ECF Dkt. #17 at 20-22; #22 at 6-8. Specifically, Plaintiff states that the Commissioner did not give meaningful analysis to the factors of: length, frequency, nature, and extent of Plaintiff's treatment relationship; and

to the consistency of medical source treatment as opposed to the opinions of treating sources who provided disparate treatment for pain and had a limited treatment relationship. *See* ECF Dkt. #17 at 21; #22 at 8.

a. <u>Dr. Dennis Assenmacher, M.D.</u>

The record suggests that Dr. Assenmacher has treated Plaintiff consistently since 2014. *See*, *e.g.*, tr. at 136-37, 373, 375; ECF Dkt. #17 at 21. The Commissioner does not dispute that Dr. Assenmacher is a treating physician. *See* ECF Dkt. #20 at 15. As such, the Court finds that Dr. Assenmacher's opinions should be afforded treating physician status, and the ALJ must have given good reasons for affording less than controlling weight to his opinions.

The ALJ recited Dr. Assenmacher's opinion evidence in her July 16, 2018 decision. *See* tr. at 136-37. In October 2015, Dr. Assenmacher noted that Plaintiff "feels she cannot work as a health care aide with her current osteoarthritis of the right knee and it is recommended that she remain off work from June 2, 2014 to July 1, 2016." *Id.* at 136 (citing tr. at 335). In this same treatment note, Dr. Assenmacher wrote that Plaintiff was "given a handicap sticker until July 1, 2020." *Id.* (citing tr. at 335). In a May 2016 letter, Dr. Assenmacher summarily wrote that Plaintiff was "permanently disabled" due to degenerative changes in her right knee. *Id.* (citing tr. at 327). The ALJ noted that Dr. Assenmacher expressed a similar opinion in 2016 treatment notes, stating that Plaintiff was "considered permanently disabled and unable to work" due to knee arthritis, and that future surgery–including knee replacement–likely would not result in "enough improvement to return to any significant occupation." *Id.* (citing tr. at 503, 506, 520). On July 11, 2017, Dr. Assenmacher again opined that Plaintiff was "unemployable" due to arthritis of the right knee. He wrote that Plaintiff was capable of sitting "0" hours in a normal workday, standing and/or walking "0" hours, and lifting only up to five pounds. He further opined that the knee arthritis caused "extreme" limitations in pushing/pulling, bending, handling, and repetitive foot movements. *Id.* (citing tr. at 499-500, 580-83).

The ALJ afforded "weight" to Dr. Assenmacher's opinions only insofar as they are consistent with evidence that the degenerative changes in Plaintiff's knees and back, in combination with her morbid obesity, limit her tolerances for sitting, standing, walking, lifting,

and postural activities. Tr. at 137. She stated that degenerative changes were established by imaging studies, and the limitations were established by providers' observations that Plaintiff walks with a mild limp and has range-of-motion deficits due to joint disease and obesity. *Id.* (citing tr. at 330-83, 395-486, 503-16, 530-51).

The ALJ afforded "little weight" to the fact that Dr. Assenmacher gave Plaintiff a handicap sticker, or recommended that she "remain off work" (at a time when she had not reported earnings for years), or believed her to be "unemployable," "permanently disabled," and unable to "return to any significant occupation." *Id.* The ALJ correctly stated that the determination of disability for Social Security purposes is reserved to the Commissioner. Tr. at 137; *see* 42 U.S.C.A. § 405(b)(1); 20 C.F.R. § 416.920; 20 C.F.R. § 416.927(d)(1); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997)).

Finally, the ALJ noted that Dr. Assenmacher's conclusion that Plaintiff is incapable of doing *any* sitting, standing, or walking is inconsistent with evidence that her knees are stable, that she walks without an assistive device, that the degenerative changes in her spine, hip, and knees are mild to moderate overall, that weight loss will improve her symptoms, and that she manages daily activities such as childcare, meal preparation, chores, and shopping. Tr. at 137 (citing tr. at 267-68, 330-83, 434-95, 503-16). The records cited by the ALJ show inconsistency within Dr. Assenmacher's own provider notes, as well as notes from Dr. Stacy Bowen, Dr. Karen Robie, Ph.D., and Dr. Karina Zapiecki, M.D. *See id.* at 267-68, 330-83, 434-95, 503-16.

Within her argument concerning Dr. Assenmacher's opinion, Plaintiff appears to take issue with the fact that the ALJ actually gave deference to her own treating provider, Dr. Bowen, on the issue of Plaintiff's obesity. ECF Dkt. #17 at 21. As a treating source, Dr. Bowen's treatment notes and any of her opinions are generally entitled to controlling weight. 20 C.F.R. § 416.927(c)(2). The ALJ made no error in giving deference to Dr. Bowen's treatment notes

regarding Plaintiff's obesity and her conclusion that much of Plaintiff's physical discomfort is related to her excess weight. Tr. at 135.

As such, and contrary to Plaintiff's assertions, the ALJ adequately addressed the consistency and supportability factors of 20 C.F.R. § 416.927. In addition, the ALJ was not required to expressly analyze each and every factor as long as she considered the opinion and provided sufficient good reasons in affording less than controlling weight to Dr. Assenmacher's opinions. *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). The Court finds that the ALJ adhered to the treating physician rule and provided good reasons to afford lesser weight to Dr. Assenmacher's opinions and that Plaintiff has shown no error. Accordingly, the Court finds that the ALJ's treatment of Dr. Assenmacher's opinion is supported by substantial evidence.

### b. Dr. Joseph Atallah, M.D.

Dr. Atallah, a pain management specialist, began treating Plaintiff in 2017. *See*, *e.g.*, tr. at 136-37, 373, 375; ECF Dkt. #17 at 21. The record shows that Plaintiff saw Dr. Atallah on three occasions: July 20, 2017 (Tr. at 540-43, 546-47); August 25, 2017 (Tr. at 538-40, 545, 548-49); and September 8, 2017 (Tr. at 536-38, 550-51). Dr. Atallah treated Plaintiff for her pain by administering injections and genicular nerve blocks to the right knee. Tr. at 544-45, 548-51. Aside from his treatment notes, the record does not contain an "opinion" from Dr. Atallah. In fact, Dr. Atallah did not provide any kind of opinion as to Plaintiff's functioning nor has Plaintiff pointed to any opinions other than a note expressed during Plaintiff's first visit. *See* ECF Dkt. #17 at 21 (citing tr. at 543). Instead, Dr. Atallah eventually referred Plaintiff elsewhere to get a Functional Capacity Evaluation ("FCE"), which physical therapist Scott Geist completed on October 25, 2017. Tr. at 553-59. The Commissioner failed to discuss Dr. Atallah in his merits brief. *See* ECF Dkt. #20.

A treating source includes a claimant's physician who has provided claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902 (effective June 13, 2012 to Mar. 26, 2017). Whether the claimant has an "ongoing treatment relationship with an acceptable medical source" depends upon whether the claimant has seen that source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for that medical condition. *Id.* In addition, the Sixth Circuit has held that a single examination does not suffice to afford treating physician status. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506 (6th Cir. 2006); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding treating physician rule did not apply to clinical psychologist who examined claimant only once, was paid by SSA to examine claimant, and administered no treatment); *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) ("Dr. Zupnick is not a treating physician given the fact that he evaluated the claimant on only one occasion."). The Circuit also noted that "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky*, 167 Fed.Appx. at 506 (citing *Cunningham v. Shalala*, 880 F.Supp. 537, 551 (N.D.Ill.1995) (where physician saw claimant five times in two years, it was "hardly a foregone conclusion" that his opinion should be afforded great weight)).

Plaintiff presented to Dr. Atallah on three separate occasions in July, August, and September of 2017. She initially presented with hip and knee issues, and she received genicular nerve blocks in her right knee to provide pain relief during her two subsequent visits. *See* tr. at 540, 543-45. In his treatment notes, Dr. Atallah wrote that Plaintiff stated that she has had right knee pain since an injury from January of 2014. Tr. at 546.

The ALJ did not expressly discuss Dr. Atallah's treatment notes or even mention Dr. Atallah directly. However, throughout her decision, the ALJ consistently cited to Dr. Atallah's treatment records. *See* tr. at 129, 131-32, 134-38 (citing Ex. B14F, tr. at 530-51). The ALJ's decision indicates that she did not clearly afford treating physician status to Dr. Atallah's treatment notes. So, too, does this Court find that Dr. Atallah is not a treating physician, and, consequently, the ALJ need not have given good reasons for affording less than controlling

weight to his opinion. Plaintiff's hip and knee pain was an issue for her for several years before she first presented to Dr. Atallah, whom she visited only three times in a short span of time. Also, Plaintiff did not provide an opinion from Dr. Atallah for the record. Rather, the record reflects that Dr. Atallah referred Plaintiff elsewhere for an opinion on her functioning. As a non-treating source, the ALJ was only required to "consider" his treatment notes, which the record clearly reflects through numerous citations. Plaintiff has not made more specific arguments to challenge the ALJ's treatment of Dr. Atallah's treatment notes and this Court is inclined to defer to the ALJ's judgment in light of the substantial evidence standard.

c.    Nurse Sara Webb, CNP

Finally, Plaintiff avers that Nurse Sara Webb is a treating source whose opinion should have been afforded "controlling weight." ECF Dkt. #17 at 21-22; #22 at 8. 20 C.F.R. § 416.927(f) governs opinions from medical sources who are not acceptable medical sources and from nonmedical sources, which encompasses nurse practitioners. *See* 20 C.F.R. § 416.913(a) & (d)(1) (effective Sept. 3, 2013 to Mar. 26, 2017) (listing nurse practitioners as "other sources"); *e.g.*, *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 392, 397-98 (6th Cir. 2014) (unpublished) (noting that nurse practitioners are "other sources," and not acceptable medical sources).

An ALJ generally should explain the weight given to opinions from medical sources who are not acceptable medical sources, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of a case." SSR 06-03p, at *6. The Sixth Circuit interpreted SSR 06-03p to mean that an ALJ should discuss the 20 C.F.R. § 416.927(c) factors[5] relating to treatment, in order to provide a basis for why the ALJ was rejecting the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) ("The factors set forth in 20 C.F.R. § 404.1527, which under the regulation apply only to medical opinions from acceptable

---

[5] Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)).

medical sources, nevertheless 'represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their professional capacity.'") (citing SSR 06-03p). However, an ALJ does not need to provide "good reasons" for rejecting the opinions of nonacceptable medical sources, including nurse practitioners. *See* 20 C.F.R. § 416.927(c)(2) ("good reasons" are only required when an ALJ provides less than controlling weight to a treating source's medical opinion); *Handzel v. Comm'r of Soc. Sec.*, No. 1:13-CV-01779, 2014 WL 2611858, at *4-5 (N.D. Ohio June 11, 2014) (noting that ALJs are not required to give "good reasons" for rejecting the opinions of nurse practitioners because they are not acceptable medical sources under the regulations); *Leach v. Comm'r of Soc. Sec.*, No. 3:13 CV 2037, 2015 WL 1221925, at *3 (N.D. Ohio Mar. 17, 2015) ("[T]he regulations do not require the same heightened 'good reasons' analysis that applies to the opinions of acceptable medical sources.").

Here, the ALJ failed to discuss Nurse Webb's opinion entirely and her opinion is not mentioned anywhere in the ALJ's decision. Although Nurse Webb is not entitled to the higher deference given to treating physicians, her opinion was entitled to consideration. Despite this failure, the Court finds that the ALJ committed harmless error.

As the Commissioner noted, Nurse Webb's opinion is almost identical to Dr. Assenmacher's opinion. *See* ECF Dkt. #20 at 6; tr. at 580-81, 584-85. On the first page of both Dr. Assenmacher's and Nurse Webb's opinions, they both described Plaintiff's medical condition as "M17.11 Osteoarthritis of right knee," that their office began treating her in September 2014, and that Plaintiff's "knee gives out, unable to stand long periods of time, pain, weakness." Tr. at 580, 584. On the second page of their respective opinions, both sources made nearly identical functional limitations. *Id.* at 581, 585. For example, both opined that Plaintiff was capable of sitting for "0" hours in a normal workday, standing and/or walking "0" hours, and lifting only up to five pounds frequently. *Id.* They both marked that Plaintiff was "extremely limited" in

pushing/pulling, bending, handling, and repetitive foot movements[6]. *Id.* The only difference appears to be that Dr. Assenmacher opined Plaintiff was "unemployable," whereas Nurse Webb selected "no" when asked if Plaintiff was unable to engage in substantial gainful activity. *Id.*

As previously discussed, the ALJ gave "weight" to Dr. Assenmacher's opinion to the extent it was consistent with the evidence, specifying what he found to be consistent and later explaining what he found was inconsistent. Tr. at 137. This reasoning applies also to Nurse Webb's opinion because it was virtually identical. Moreover, the ALJ specifically afforded "little weight" to Dr. Assenmacher's opinion concerning Plaintiff's employability. *Id.* Although Nurse Webb opined that Plaintiff was able to return to substantial gainful activity, the reasoning the ALJ set forth still applies–it is for the Commissioner to ultimately decide whether a claimant is disabled. *Id.* (citing 20 C.F.R. § 416.927). Even so, the ALJ ultimately agreed with Nurse Webb's opinion regarding substantial gainful activity since she found Plaintiff was not under a disability for Social Security purposes and that there were jobs in the national economy that she can perform. *Id.* at 139-40.

Accordingly, the Court finds that the ALJ erred in not considering Nurse Webb's opinion, but it was harmless error because her opinion was virtually identical to Dr. Assenmacher, whose opinion the ALJ adequately considered. *See Phillips v. Comm'r of Soc. Sec.*, No. 1:07-CV-675, 2008 WL 4394274, at *5 (W.D. Mich. July 2, 2008) (finding that ALJ erred in a disability benefits proceeding by failing to consider a nurse practitioner's treatment and opinions pursuant to SSR 06–03p, but finding such error was harmless because a treating psychiatrist wrote a virtually identical evaluation of the claimant only four months later which the ALJ did consider). In addition, the Plaintiff has not shown how she was specifically prejudiced by this error.

### B.       Step Three

Plaintiff argues that the ALJ erred at step three of the sequential process because she did not provide a detailed explanation as to medical equivalency or why the severity and duration of

---

[6] Nurse Webb accidentally or mistakenly began marking her limitations starting with the box asking the question, later skipped one row of boxes (repetitive foot movements), and then marked the last three boxes. Tr. at 585. It seems to have been a clerical error and that she intended to make the exact same marks as Dr. Assenmacher. *Id.* at 581, 585.

Plaintiff's impairments in combination did not constitute a disability. *See* ECF Dkt. #17 at 22-24; #22 at 8-11. Plaintiff also avers that the ALJ had a duty to seek the advice of a medical expert ("ME") and failed to explain why no expert assistance was required. ECF Dkt. #17 at 24.

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. 20 C.F.R. § 416.920. At step three of the sequential process, it is the claimant's burden to bring forth evidence to establish that she meets or equals a listed impairment. *See, e.g.*, *Evans v. Sec'y of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987) (per curiam); *Lett v. Colvin*, 2015 WL 853425, at * 16 (N.D. Ohio Feb. 26, 2015). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

A claimant is also disabled if her impairment is the medical equivalent of a listing, meaning the impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 416.925(c)(5), 416.926(a). Medical equivalence can be found in a number of ways in light of all of the evidence in the claimant's record, except for the vocational factors of age, education, and work experience. In addition, the regulations also expressly state that the opinion given by medical consultants designated by the Commissioner will be considered in determining medical equivalence. 20 C.F.R. § 416.926(b)-(c). "An [ALJ] must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 415 (6th Cir. 2011). In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for her decision. *Id.* at 416.

Initially, state agency medical or psychological consultants have the overall responsibility for determining medical equivalence. 20 C.F.R. § 416.926(e)(1). As the disability case proceeds,

that responsibility eventually shifts to the ALJ. 20 C.F.R. § 416.926(e)(3); *see* SSR 96-6p[7], 1996 WL 374180, at *3; *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 415 (6th Cir. 2011) (unpublished) (An ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."). Social Security policy dictates that the judgment of a physician designated by the Commissioner on the issue of equivalence must be received into the record as expert opinion evidence and given appropriate weight. SSR 96-6p, at *3.

Social Security regulations state that an ALJ "*must* obtain an updated opinion from a 'medical expert'[8] in the following circumstances":

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a *judgment of equivalence may be reasonable*; or

> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *3 (emphasis added). Also, "[a]n updated medical expert opinion must be obtained by the [ALJ] before a decision of disability *based on medical equivalence can be made.*" SSR 96-6p, at *1 (emphasis added). Courts in this Circuit have held that, "[g]enerally, the opinion of a medical expert is required before a *determination of medical equivalence* is made." *See, e.g.*, *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir.1995) (unpublished) (citing 20 C.F.R. § 416.926(b)) (emphasis added); *Bailey v. Colvin*, No. 1:15CV1886, 2016 WL 4943015, at *4 (N.D. Ohio Sept. 16, 2016) (same); *Ridge v. Barnhart*, 232 F. Supp. 2d 775, 788 (N.D. Ohio 2002) (same).

---

[7] SSR 96-6p has been rescinded and does not apply to claims filed after March 27, 2017. *See* SSR 17-2p, 82 Fed. Reg. 15263-02 (Mar. 27, 2017) (rescinding and replacing SSR 96-6p). Since Plaintiff filed her claim in 2016, SSR 96-6p still applies.

[8] SSR 96-6p defines "medical expert" as "the source of expert medical opinion designated as a 'medical advisor' in 20 CFR 404.1512(b)(6), 404.1527(f), 416.912(b)(6), and 416.927(f). This term is being used because it describes the role of the 'medical expert' as an expert witness rather than an advisor in the course of an administrative law judge hearing." SSR 96-6p, 1996 WL 374180, at *3 n.2.

To clarify, the requirement for an ALJ to obtain a ME's opinion is contingent on whether the ALJ makes an express equivalency finding or if it was reasonable to do so. Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. at 130. Had the ALJ found that Plaintiff's impairment(s) medically equaled a Listing, then the ALJ would have been required to seek the advice of a ME on that issue. Thus, the requirement in SSR 96-6p was not triggered in the instant case because the ALJ did not make a finding of medical equivalency. Nor has Plaintiff shown that it was reasonable to have made a medical equivalency finding or which Listing would have been relevant to such finding.

Plaintiff relies on SSR 17-2p, a regulation that only became effective after Plaintiff already filed her claim. ECF Dkt. #22 at 8. SSR 17-2p, 2017 WL 3928306 (effective Mar. 27, 2017). However, even SSR 17-2p states that: "If an adjudicator at the hearings or [Appeals Council] level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4; *see, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. CV 18-12611, 2019 WL 2240711, at *4 (E.D. Mich. Apr. 8, 2019), *report and recommendation adopted*, No. CV 18-12611, 2019 WL 2208151 (E.D. Mich. May 22, 2019) (noting that SSR 17-2p's evidentiary requirements only apply when an ALJ finds that a claimant's impairments are medically equivalent to a Listing and do not apply if the ALJ found that the claimant's impairments are not medically equivalent to the Listing's requirements).

In addition, other regulations state that:

> [ALJs] *may also ask for and consider opinions from medical experts* on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to subpart P of part 404 of this chapter. *When [ALJs] consider these opinions*, they will evaluate them using the rules in paragraphs (a) through (d) of this section.

20 C.F.R. § 416.927(e)(2)(iii) (effective Aug. 24, 2012 to Mar. 26, 2017) (emphasis added). The regulations imply that ME opinions are optional, such that ALJs may, but are not required to, ask

for and consider such opinions, unless the evidence in the record reasonably supports a medical equivalency finding, in which case an ME opinion is generally required.

Thus, the issue becomes whether the evidence in Plaintiff's record suggested that a finding of medical equivalence was reasonable. SSR 96-6p; *Ridge v. Barnhart*, 232 F. Supp. 2d 775, 789 (N.D. Ohio 2002) (reversing where court found it was "reasonable that the medical evidence could establish that Plaintiff's impairments in combination could equal [a Listing] such that a medical expert should have been called, or at least, the ALJ could have further explained his decision not to use a medical expert and his finding of a lack of medical equivalency"). For support, Plaintiff cites to her impairments that the ALJ deemed were "nonsevere," which included pain, hypertension, cataract surgery, overactive bladder, gastroesophageal reflux disease ("GERD"), fibromyalgia, rheumatoid arthritis, carpal tunnel syndrome, hand and finger numbness, and visual limitations. ECF Dkt. #17 at 23-24; tr. at 129-30. Plaintiff states that it was reasonable that the medical evidence establish that her impairments, in combination, could exceed or equal the Listings. ECF Dkt. #17 at 24.

Although Plaintiff has the burden of proving disability, Plaintiff has not pointed to any specific Listing that she medically equals. *See* ECF Dkt. #s 17, 22. The Court agrees with the Commissioner that Plaintiff's conclusory challenge essentially acts as a waiver to the ALJ's step three finding. ECF Dkt. #20 at 9; *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citations omitted); *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."); *see also James v. Comm'r of Soc. Sec.*, No. 5:10-CV-02448, 2011 WL 5971032, at *8 (N.D. Ohio Nov. 29, 2011) (finding a particular social security disability issue

waived because plaintiff did not offer specific allegations or argumentation of error) (citing *McPherson v. Kelsey*, 125 F.3d 989 (6th Cir.1997)).

Plaintiff also has not argued that the ALJ erred in characterizing her nonsevere impairments. In fact, the ALJ considered each of Plaintiff's nonsevere impairments and gave specific reasons why they are nonsevere. *See* tr. at 129-30. Rather, Plaintiff argues that the ALJ erred in "failing to provide a detailed explanation as to medical equivalency or why the severity and duration of [Plaintiff's] impairments in combination do not constitute a disability." ECF Dkt. #17 at 23. The Supreme Court has stated that: "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531-32 (1990) (citing SSR 83-19, at 91-92 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of overall functional impairment.... The functional consequences of the impairments ... irrespective of their nature or extent, cannot justify a determination of equivalence")).

There is no heightened articulation requirement as Plaintiff avers. The ALJ expressly stated in her decision that she considered the combined effects of all the Plaintiff's impairments, noting Plaintiff "does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments." Tr. 130. This statement, combined with the ALJ's detailed discussion of the medical record, demonstrates the ALJ fulfilled her obligation to consider Plaintiff's impairments in combination. *Johnson v. Chater*, 87 F.3d 1315 (6th Cir. 1996) (unpublished) ("The ALJ stated that he evaluated [the claimant's] impairments in combination. Therefore, no further discussion is required by the ALJ."); *Sutton v. Berryhill*, No. 1:17CV233, 2017 WL 6568183, at *17 (N.D. Ohio Dec. 8, 2017), *report and recommendation adopted sub nom. Sutton v. Comm'r Soc. Sec.*, No. 1:17-CV-233, 2017 WL 6558165 (N.D. Ohio Dec. 22, 2017) (citing *Endres v. Colvin*, No. 2:15-CV-026-KKC, 2016 WL 1260739, at *3 (E.D. Ky. Mar. 29, 2016)).

Plaintiff has not shown any error at step three. She did not articulate which Listing she alleges she medically equaled or what record evidence would have supported a medical

equivalency finding, thus triggering the requirement to consult with a ME. *See* SSR 96-6p. For the aforementioned reasons, the Court finds that the ALJ did not err at step three and supported her decision with substantial evidence.

### C.    RFC and VE Hypotheticals

Although couched in terms of faulty hypothetical questions posed to the VE, Plaintiff's next contentions actually concern the ALJ's RFC determination. ECF Dkt. #17 at 11-20; *see also* ECF Dkt. #20 at 17. As a consequence of an incorrect RFC determination, Plaintiff avers that the hypothetical questions elicited by the ALJ to the VE failed to account for her impairments and, thus, the VE's testimony likewise did not accurately depict Plaintiff's impairments.  ECF Dkt. #17 at 11-20. For the following reasons, the Court finds Plaintiff's contentions without merit.

#### 1.    ALJ's Determination of Plaintiff's RFC

Plaintiff argues that the ALJ, and consequently the VE, "did not fully consider" evidence concerning restrictions and limitations associated with: pain; obesity; carpal tunnel; sleep apnea; asthma, and a sit/stand option, citing to physical therapist Scott Geist and treating physician Dr. Assenmacher for some support. ECF Dkt. #17 at 11-19.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 416.945(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. § 416.945(A)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.945(c); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009); SSR 96-5p[9], 1996 WL 374183, at *5.

SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess her work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record,

---

[9] *See supra* note 4.

including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, a need for a structured living environment, and work evaluations. *Id*. In addition, SSR 02-1p requires an ALJ to consider obesity when making a RFC determination. SSR 02-1p, 2002 WL 34686291, at *7 ("When we identify obesity as a medically determinable impairment [], we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.").

The ALJ discussed Plaintiff's both severe and nonsevere medically determinable impairments. First, the ALJ considered and discussed Plaintiff's nonsevere impairment of carpal tunnel syndrome. Tr. at 130. The ALJ noted Plaintiff's hearing testimony that she received braces for carpal tunnel years ago, but review of the record did not disclose a current diagnosis of carpal tunnel syndrome. *Id*. The ALJ also noted that he found Plaintiff had a severe impairment of epicondylitis/mononeuritis of the upper extremities. *Id*. She concluded that carpal tunnel did not appear to be a medically determinable impairment in this case, but that to the extent it exists, the medical evidence did not establish that it causes limitations more restrictive than those described in the RFC assessment. *Id*. Thus, the ALJ considered this impairment. Plaintiff only summarily addresses carpal tunnel syndrome but did not point out any error in the ALJ's analysis; nor does the Court find error. *See* ECF Dkt. #17 at 12.

The ALJ also considered and discussed Plaintiff's severe impairments of asthma, obstructive sleep apnea, bilateral epicondylitis/mononeuritis (to which Plaintiff cites for pain), and morbid obesity. Tr. at 129-31. The ALJ stated that there is no question that an individual can be limited by degenerative changes to the spine and joints and by pulmonary impairments, particularly when those conditions are combined with the musculoskeletal strain imposed by morbid obesity. *Id*. at 134. The ALJ further stated that the record established that Plaintiff's severe physical impairments limit her, but that the record overall did not establish that the limitations preclude all manner of work. *Id*.

The ALJ expressly considered Plaintiff's asthma under Listing 3.03, but she found that the medical evidence did not establish the required chronic asthmatic bronchitis and FEV values, or the required frequency and intensity of attacks. Tr. at 130. Plaintiff does not contend that she meets a Listing, but rather argues that she has asthma. ECF Dkt. #17 at 13-14. The ALJ also made specific note of her medical records concerning asthma, which was assessed as "intermittent" and "well-controlled." Tr. at 135 (citing tr. at 501-02, 588). In examinations, her symptoms have been negative for shortness of breath, chest discomfort, and wheezing. *Id.* (citing tr. at 399, 458, 479, 542). The ALJ noted the Plaintiff's providers found that her lungs were clear, her respirations were unlabored, and her oxygen saturation on room air was good. *Id.* (citing tr. at 399, 405, 588, 593). In addition, the ALJ noted that Plaintiff was able to manage her asthma with medications, such as Nasonex and Ventolin. *Id.* at 134 (citing tr. at 501). Contrary to Plaintiff's complaints, the ALJ accounted for Plaintiff's asthma in her RFC analysis, limiting her to only occasional work in conditions of humidity, wetness, extreme heat or cold; where there is concentrated dust, odors, fumes, and other pulmonary irritants; and where vibrations are present. Tr. at 133. Plaintiff has not shown error regarding the ALJ's treatment of Plaintiff's asthma and the Court finds none.

Plaintiff challenges the ALJ's (and VE's subsequent) treatment of her sleep apnea. ECF Dkt. #17 at 12. The ALJ considered Plaintiff's sleep apnea under Listing 3.02. Tr. at 130-31. However, the ALJ found that the evidence did not establish the required FEV/FVC values, or chronic impairment of gas exchange, or hospitalizations to qualify under the Listing. *Id.* at 130. Further, the ALJ noted that Plaintiff's sleep apnea could affect the restfulness of her sleep, but the 2017 sleep study showed that it was manageable with a CPAP device. *Id.* at 135 (citing tr. at 563); *see also* tr. at 24 (Plaintiff testified she uses CPAP and it is effective). Again, Plaintiff only mentions sleep apnea as an issue but makes no specific challenges to the ALJ's treatment thereof. The Court finds no error with the ALJ's treatment of Plaintiff's sleep apnea.

Plaintiff next challenges the ALJ's treatment of her symptoms of pain, which she associates with bilateral lateral epicondylitis/mononeuritis multiplex ("MNM"). ECF Dkt. #17 at 12-13. Plaintiff argues that there was no reference to pain or numbness that resulted from such diagnoses in the hypothetical questions posed to the VE. *Id.* The ALJ found that bilateral

epicondylitis/mononeuritis was a severe impairment, but that it did not meet Listing 11.14 because the medical evidence did not establish the required disorganization of motor function. Tr. at 129, 131. Plaintiff, without specific support, claims that the ALJ's decision is "bereft" of any analysis of Plaintiff's subjective pain allegations. ECF Dkt. #17 at 13. The undersigned notes, as an initial matter, that the ALJ considered Plaintiff's subjective complaints of her symptoms, including pain. *See* tr. at 133-34. The ALJ specifically noted that Plaintiff alleged that she experiences constant, diffuse bodily pain, that pain exists throughout her spine and in nearly all joints of her upper and lower extremities, and that she has not responded to pain injections or to over-the-counter pain medications. *Id.* at 133. However, the ALJ found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. *Id.* at 134.

Upon consideration of the record, the ALJ found that it established a diagnosis of bilateral medial epicondylitis in 2015, based on her complaints of elbow pain. Tr. at 134 (citing tr. at 342). Two years later, in 2017, Plaintiff's diagnoses included mononeuritis of the bilateral upper extremities. *Id.* (citing tr. at 541). In June 2016, Plaintiff's complaints of low back pain and left hip pain led to x-rays of her spine and hip. The spine x-ray revealed mild facet disease throughout the lumbar spine, disc-space narrowing at L5-S1, and mild degenerative changes in the sacroiliac joints. *Id.* (citing tr. at 419). The hip x-ray revealed minimal degenerative arthritic changes. *Id.* (citing tr. at 331). The ALJ stated that there was very little evidence in the record regarding the impairments in Plaintiff's upper extremities. *Id.* at 135. She noted that at the time Plaintiff was diagnosed with epicondylitis, a physical examination showed that she retained full range of motion in both elbows. *Id.* (citing tr. at 342).

Plaintiff's broad argument concerning pain and her diagnoses of bilateral epicondylitis/ mononeuritis do not suffice to show any error on the part of the ALJ where the ALJ considered such symptoms and provided detailed explanations to provide substantial evidence for her decision. A mere diagnosis of a condition is insufficient to establish severity of a condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Further, as explained by the ALJ, the record is

devoid of any significant evidence regarding Plaintiff's upper extremity impairments. Tr. at 135. Plaintiff has not shown that additional restrictions were warranted.

The ALJ analyzed Plaintiff's diagnosis and complaints of pain in depth and her discussion also coincided with her analysis of Plaintiff's obesity. The ALJ found that morbid obesity was one of Plaintiff's severe impairments. Tr. at 129. The ALJ stated that Plaintiff's height and weight corresponded to a Body Mass Index ("BMI") between 46 and 48, which meets the standard for morbid obesity established by the National Institutes of Health. *Id.* at 131 (citing tr. at 330-83, 395-416, 501-02, 588-97). The ALJ also stated that she considered Plaintiff's obesity in accordance with SSR 02-1p, which instructs her to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's RFC. *Id.* When obesity is identified as a medically determinable impairment, consideration will be given to any resulting functional limitations in the RFC assessment. *Id.* The ALJ further noted that no treating or examining physician documented findings demonstrating that Plaintiff's obesity is, by itself or in combination with another impairment, medically equivalent to a listed impairment. *Id.*

Later on, the ALJ noted that Plaintiff's providers have concluded that much of her physical discomfort is related to her excess weight. Tr. at 135. They have attributed mild range-of-motion deficits in her lumbar spine and lower extremities to her body habitus, and they have advised her to lose weight. *Id.* (citing tr. at 337, 459, 480-81). The ALJ discussed records from Dr. Bowen in depth, in which Dr. Bowen essentially had long discussions with Plaintiff, informing her that her health and symptomology was largely due to her obesity. Plaintiff protested that her weight was unrelated to her pain, said there was nothing she could do about her weight, and had not lost any weight by a subsequent physical exam. *Id.* (citing tr. at 399, 401-02, 481). The ALJ found that the medical evidence did not reflect that Plaintiff followed Dr. Bowen's advice. *Id.*

For additional support, Plaintiff cited to physical therapist Scott Geist and Dr. Assenmacher. After conducting a FCE, Mr. Geist opined that Plaintiff could "never" climb ramps and stairs, crawl, crouch, kneel, or squat. Tr. at 137, 555. Plaintiff takes issue with the fact that

the ALJ's hypothetical to the VE assumed Plaintiff can "occasionally" climb ramps and stairs, balance, stoop, kneel, crouch, and reach overhead. ECF Dkt. #17 at 13 (citing tr. at 57-59, 554-61). Plaintiff does not argue that ALJ erred in her assessment of Scott Geist's opinion. Nor would the Court find him entitled to any higher deference since he evaluated Plaintiff once and was a physical therapist and not a treating physician. The ALJ summarized Mr. Geist's findings and gave it "weight" to the extent that it accords with longitudinal medical evidence regarding the degenerative changes in Plaintiff's spine and joints, her history of right knee arthroscopy, her diagnosis of epicondylitis/mononeuritis, and her body habitus. Tr. at 137 (citing tr. at 330-83, 395-486, 503-16, 530-51). The ALJ refused to accept Mr. Geist's opinion that Plaintiff cannot sustain a normal eight-hour workday because it is an issue reserved to the Commissioner. *Id.* Also, the ALJ noted it is inconsistent with the mild deficits seen in x-rays, with Plaintiff's normal strength and motor functioning, with her ability to manage her daily living activities, and with evidence that weight reduction will significantly improve her discomfort. *Id.* (citing tr. at 330-83, 395-486).

The ALJ adequately explained her reasoning in her discussion of Mr. Geist's opinion, particularly in light of the consistency and supportability factors of 20 C.F.R. § 416.927. Mr. Geist is not a treating physician and the ALJ only afforded "weight" to a certain extent and "no weight" to parts of his opinion, necessarily meaning less than controlling weight. Plaintiff has not shown error in the ALJ's analysis, and the ALJ was not required to adopt Mr. Geist's extreme limitations.

Plaintiff also cited to Dr. Assenmacher's opinion that Plaintiff could sit "0" hours and stand and/or walk for "0" hours in a normal workday. ECF Dkt. #17 at 14 (citing tr. at 581). Plaintiff refers to this as a "sit/stand option," but this is an incorrect characterization. A sit/stand option describes the special situation of needing to alternate between sitting and standing. *See* SSR 83-12, 1983 WL 31253, at *4; SSR 96-9p, 1996 WL 374185, at *7. Dr. Assenmacher did not opine that Plaintiff required a sit/stand option. *See* tr. at 580-81. Still, the ALJ included a sit/stand option in her RFC determination and within her hypothetical questions to the VE. *Id.* at

58-60, 133. While it is unclear to the undersigned where the ALJ derived the sit/stand option, such an additional limitation actually benefits the Plaintiff and is not prejudicial to her.

For the reasons already described, the ALJ provided good reasons for affording less than controlling weight to Dr. Assenmacher's opinion, and therefore, was not required to adopt his extreme limitations. Consequently, the ALJ was not required to submit hypothetical questions to the VE that included either of Mr. Geist's or Dr. Assenmacher's extreme limitations. *Cf.* 20 C.F.R. § 416.960 ("[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person *with the physical and mental limitations imposed by the claimant's medical impairment(s)* can meet the demands of the claimant's previous work.") (emphasis added); *Lancaster v. Comm'r of Soc. Sec.*, 228 Fed.Appx. 563, 573 (6th Cir. 2007) ("This Court has found that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments.") (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987) (internal quotations omitted)).

Plaintiff also alleges that the ALJ failed to ask the VE to consider Plaintiff's use of knee braces, a cane and/or crutches. ECF Dkt. #17 at 17-18. During the hearing before the ALJ, Plaintiff's attorney stated that Plaintiff was prescribed a wrist, elbow, and knee brace. Tr. at 62. On May 8, 2014, Plaintiff was prescribed a knee brace and it was discontinued on June 16, 2016 because Plaintiff completed therapy. *Id.* at 568 (prescription); 455 (discontinuance); 361, 393, 403, 438, 443, 455, 505 (noting prior knee brace prescription). Further, on June 23, 2015, Dr. Assenmacher ordered a tennis elbow splint due to joint paint and medial epicondylitis. *Id.* at 573. By the time of the hearing on March 16, 2018, the knee brace prescription was long expired. In addition, the ALJ accommodated Plaintiff's right knee issues in her RFC determination and noted the epicondylitis as a severe impairment. *See* tr. at 132-33.

Plaintiff has not shown that a cane was medically necessary or even prescribed. She points to Dr. Assenmacher's statement that: "If we perform any surgery I do not feel that she will have enough improvement to return to any significant occupation and most likely will need to use a

cane or crutch intermittently." ECF Dkt. #17 at 17 (citing tr. at 503). However, such a prospective and speculative opinion is not relevant and, as the Commissioner notes, Plaintiff did not undergo further surgery during the relevant period. ECF Dkt. #20 at 13 n.6. Also, the ALJ analyzed the medical evidence and found that although the flexion in her right knee is reduced, it does not prevent her from ambulating independently, without an assistive device. Tr. at 135 (citing tr. at 267-68, 542-43). Even during the hearing, Plaintiff testified:

> I'm supposed to be using a cane, but because of the weight of the pressure that I have to put on the cane, it makes by whole arm go numb. So, it's – it doesn't help any. It makes it worse, actually, So, I take my chances with attempting to try to balance it out.

Tr. at 27. Any assistive device was not medically necessary. As such, the ALJ was not required to include the use of an assistive device in the RFC or in any hypothetical questions to the VE. *See* SSR 96-9p ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed...").

### 2.    ALJ's Hypothetical Questions to VE

Plaintiff avers that the ALJ erred in several respects, such that the ALJ: (1) failed to formulate a hypothetical that incorporated substantial evidence of her medical impairment(s), limitations, and restrictions; (2) erroneously adopted certain VE job recommendations; (3) did not ask the VE to clarify the impact of a sit/stand option on Plaintiff's occupational base; and (4) failed in her duty to ask the VE on record whether his testimony conflicts with information in the Dictionary of Occupational Titles ("DOT"). ECF Dkt. #17 at 11, 14, 16, 19.

The first assignment of error is related to the previous section regarding RFC. The Court found no merit to Plaintiff's challenges and no error in the ALJ's RFC determination. Therefore, Plaintiff's first assignment of error is without merit.

Plaintiff's second assignment of error concerns the ALJ's adoption of certain VE job recommendations. In both her base hypothetical and in her ultimate RFC determination, the ALJ limited Plaintiff to never working around hazards such as moving dangerous mechanical parts. Tr. at 57, 132. Plaintiff alleges that the ALJ adopted the VE's job recommendations that require

Plaintiff to work around a conveyor belt in one job and a nailing machine in another, in direct contradiction to her earlier finding. ECF Dkt. #17 at 14 (citing *Dictionary of Occupational Titles*: 521.687-086 (Nut Sorter), 713.687-018 (Final Assembler), and 669.687-010 (VE referred to as "inspector job," but DOT lists it as "Cleat Feeder"); citing tr. at 59-60, 325). Specifically, "Nut Sorter" is described as follows: "Removes defective nuts and foreign matter from bulk nut meats: Observes nut meats on *conveyor belt*, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers." *Dictionary of Occupational Titles*: 521.687-086 (Nut Sorter) (emphasis added). "Cleat Feeder" is described as follows: "Positions one or more cleats, used in wood boxes or box shooks, against stop under *nailing machine*. Carries supply of cleats of specified size from storage area to work station." *Dictionary of Occupational Titles*: 669.687-010 (Cleat Feeder) (emphasis added). However, within the descriptions of both of these vocations, the DOT specifically notes "Moving Mech. Parts: Not Present - Activity or condition does not exist." *Dictionary of Occupational Titles*: 521.687-086 (Nut Sorter), 669.687-010 (Cleat Feeder). Accordingly, Plaintiff's second contention is without merit.

Third, Plaintiff stated that when there is an unusual limitation on the ability to sit or stand, the VE should be asked to clarify the impact on the Plaintiff's occupational base. ECF Dkt. #17 at 16 (citing *Ridge v. Barnhart*, 232 F. Supp. 2d 775 (N.D. Ohio 2002)). Here, the ALJ included a sit/stand option in her hypothetical to the ALJ and specified its meaning, such that Plaintiff "is limited to a sit/stand option at the workstation each hour, to change position for two minutes while remaining on task 90% of the time." Tr. at 58, 133. The ALJ also noted that the sit/stand option and the overhead reach limitation are not listed out in the DOT as she has laid them out in the hypothetical. *Id.* at 59-60. She then asked: "Is that part [of] your testimony based on your knowledge and experience?" to which the VE responded affirmatively. *Id.*

SSR 96-6p explains more fully the sit/stand option as it relates to a claimant's occupational base:

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the

occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7. Although the ALJ did not expressly question the VE as to the occupational base, her hypothetical was specific as to the frequency of Plaintiff's need to alternate positions. There was no need for further questioning about the sit/stand option because the hypothetical already included specific information, and the VE answered accordingly with potential occupations Plaintiff can perform with that specific limitation.

Fourth, Plaintiff alleges that the ALJ failed in her duty to ask the VE on record whether his testimony conflicts with information in the Dictionary of Occupational Titles. ECF Dkt. #17 at 19-20. Plaintiff cites to SSR 00-4p, which states:

Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
...

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.

SSR 00-4p, 2000 WL 1898704, at *2, 4.

In her July 16, 2018 decision, the ALJ, at step five, stated the following:

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, except for the sit/stand option, which the DOT does not address. The undersigned has relied on the vocational expert's experience and expertise in accepting his testimony regarding the option.

Tr. at 140 (citing tr. at 312). During the hearing, the ALJ appears to have asked the VE whether his testimony was consistent with the DOT. Tr. at 60. The ALJ's only express mention of "consistency" with the DOT was as follows:

> Q (Question by ALJ): Your testimony as far as consistency with the DOT is the same, the sit/stand and overhead reach is not delineated out in the DOT as I've listed it in this hypothetical. So, that part of your testimony is based on your knowledge and experience, correct?
>
> A (Answer by VE): Yes, Your Honor.

Tr. at 60. This presumptive question probably satisfies the mandate of SSR 00-4p. However, in case the ALJ failed in her duty to inquire about consistencies under SSR 00-4p, the Court finds that such an error would be harmless. "[A]n ALJ's failure to inquire about consistency with the DOT may constitute harmless error where there is no conflict between the VE's testimony and the DOT." *Bobo v. Berryhill*, No. 1:16CV2722, 2017 WL 7051997, at *20 (N.D. Ohio Sept. 21, 2017), *report and recommendation adopted*, No. 1:16-CV-2722, 2018 WL 562933 (N.D. Ohio Jan. 24, 2018) (collecting cases); *e.g.*, *Joyce v. Comm'r of Soc. Sec.*, 662 Fed. Appx 430, 436 (6th Cir. 2016) ("[A]n ALJ's failure to inquire about a nonexistent conflict is necessarily harmless ...."). Plaintiff has not shown any apparent conflict to constitute error and the Court finds none.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

IT IS SO ORDERED.


Date: March 26, 2020                     */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE